STEVEN G. KALAR
Federal Public Defender
Northern District of California
CANDIS MITCHELL
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:    (415) 436-7706
Email:        Candis_Mitchell@fd.org

Counsel for Defendant Reudales-Banegas

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **United States of America**, | **Case No.:** CR 19–542 CRB |
| Plaintiff, | **Sentencing Memorandum** |
| v. | |
| **Gustavo Reudales-Banegas**, | **Hearing Date:**  February 28, 2020 |
| Defendant. | **Hearing Time:**  2:00 p.m. |

## INTRODUCTION

Defendant Gustavo Reudales-Banegas, through undersigned counsel, respectfully offers the following memorandum in support of his request for a time served sentence of imprisonment.

The time serviced sentence is appropriate for the following reasons: (1) the § 3553(a) factors militate in favor of a substantially reduced sentence, and (2) Mr. Reudales-Banegas will have additional custodial time following his criminal case as he awaits deportation to Honduras.

//

//

# SECTION 3553(A) ANALYSIS

**1.     The Nature and Circumstances of the Offense**

On October 2, 2019, Mr. Reudales-Banegas was approached by an undercover police officer looking to buy drugs. The officer asked for $20 worth of heroin. Mr. Reudales-Banegas had the heroin and gave the officer a bindle of heroin in exchange for the money. He was arrested shortly afterwards with 19 other bindles of heroin on his person.

**2.     The History and Characteristics of the Defendant**

It is little wonder that in 2016, at 19, Mr. Reudales-Banegas found himself atop a train slowly travelling from Honduras through Central America to Mexico and then eventually on foot to cross the border into the United States.



Image 1. Migrants arrive at a rest stop in Ixtepec, Mexico, after a 15-hour ride atop a freight train headed north toward the U.S. border on Aug. 4. Thousands of migrants ride atop the trains, known as *La Bestia,* or The Beast, during their long and perilous journey through Mexico to the U.S.[1]

---

[1] *John Moore/Getty Images.* Taken from Sayre, Wilson, "Riding 'The Beast' Across Mexico To The U.S. Border" Parallels (June 4, 2014). Accessed at: https://www.npr.org/sections/parallels/2014/06/05/318905712/riding-the-beast-across-mexico-to-the-us-border.

Whether caused by gangs, an ineffective government, drug trafficking, or poverty, Honduras currently claims the title of "murder capital of the world."[2] The government suffers from corruption and has lost international funding after allegations of human rights abuse.[3] There are also allegations of gang infiltration of their police force.[4] "According to the State Department, 42 percent of all cocaine headed to the U.S. and 90 percent of all cocaine flights now travel through Honduras."[5] In short, the country is hard on its citizens and harder still on people like Mr. Reudales-Banegas who lacked the education or money to change his place in the world.

Growing up, Mr. Reudales-Banegas suffered from the violence in Honduras. He lost his father at an early age due to gang violence, and then shortly lost his uncle afterwards. He grew up with his mother and grandfather afraid that the gangs would shortly come after him and kill the remaining adults in his life. Trying to do his best to avoid the gangs, he sought out work in Honduras, but couldn't find steady work that would contribute to his household.

Although he did not always have enough food to eat, he considered himself to be otherwise surrounded by people who loved him. He came to the United States to help them. Having cousins that lived in the Bay Area he eventually made his way north through California as an economic migrant. When he got to the Bay Area he worked as a prep cook, house painting, delivering and moving for a housing company. When the legal work dried up, he began selling drugs as he did not have the ability to pay rent, cover expenses for himself, and additionally send money to his family. His underemployment lead to nights where he found himself sleeping out on the streets.

After he had been arrested by state authorities in October, Mr. Reudales-Banegas vowed to himself that he would just have to sacrifice more and give up the lure of the easy money made by selling drugs. He hustled hard for himself and attained work in a restaurant. He was arrested coming

---

[2] United States Department of State Bureau of Diplomatic Security. Honduras 2018 Crimes and Safety Report, (April 3, 2018). Accessed at: https://www.osac.gov/Pages/ContentReportDetails.aspx?cid=23798

[3] Khan, Carrie, "Honduras Claims Unwanted Title of World's Murder Capital" Parallels (June 12, 2013). Accessed at: https://www.npr.org/sections/parallels/2013/06/13/190683502/honduras-claimsunwanted-title-of-worlds-murder-capital.

[4] *Id.*

[5] *Id.*

to his state court appearance after following through with his voluntary resolve to engage only in lawful activities.

**3.     The Need for the Sentence Imposed To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense; To Afford Adequate Deterrence**

The requested sentence is appropriate in light of the totality of the circumstances and, thus, reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, and serves as an adequate deterrence to criminal conduct.

**4.     The Need for the Sentence Imposed To Protect the Public from Further Crimes of the Defendant; and**

Mr. Reudales-Banegas will be deported following the conclusion of his sentence and it is unlikely that the he will repeat his actions in the future. He has no significant criminal history and the public faces little risk of harm from further crimes. While the government speaks of a low-end sentence as deterring others, this case lacks the notoriety and the other hand-to-hand sellers lack the sophistication to be aware of the sentences imposed for these types of cases. As was shown by Mr. Reudales-Banegas' determination to solely attain funds through lawful means—his arrest was deterrent enough to encourage him to reform his ways.

**5.     The Need for the Sentence Imposed To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

Mr. Reudales-Banegas has a grade school education and speaks primarily Spanish—it is unlikely that any sentence that was not a lengthy one would legitimately provide him sufficient time in custody for him to acquire language skills that would permit him to attain a high school education or complete vocational training while in custody. He has no medical issues requiring treatment. His educational, medical, and mental conditions do not require special consideration for placement while in custody.

**6.     The Kind of Sentences Available**

Here, the Court may impose any sentence up to 20 years' imprisonment, life-time supervised release, a $1,000,000 fine, and a $100 special assessment. A minimum term of three-years' supervised release is required.

**7. The Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant as Set Forth in the Guidelines**

    **A. Mr. Reudales-Banegas's Proposed Guideline Calculations**

Base Offense Level, USSG § 2D1.1(c)(14)............................................ 12
Acceptance of Responsibility, USSG § 3E1.1(a) & (b) ....................... −2

Total Offense Level ....................................................................... 10
Criminal History Category ...................................................................I
Sentencing Guideline Range............................................................ 6-12
Mr. Reudales-Banegas's Recommendation.......time served (3 months)

    **B. The Court Should Adjust Downward Two Levels for Acceptance of Responsibility**

Pursuant to U.S.S.G. § 3E1.1, the Court should depart two-levels because Mr. Reudales-Banegas accepted responsibility for his involvement in the present offense as demonstrated by his guilty plea and his truthful admission of the conduct comprising the offense.

**8. Any Pertinent Policy Statement**

While Mr. Reudales-Banegas would generally encourage the Court to not impose supervised release for individuals like Mr. Reudales-Banegas who will deported after the conclusion of their sentence, he recognizes that supervision is required to be imposed as a consequence of his conviction.

**9. Unwarranted Sentencing Disparity**

While the requested sentence is a departure from the guideline range, the departure is *di minimis* when considering the conduct and the additional time Mr. Reudales-Banegas will spend in immigration custody prior to his deportation.

**10. Restitution**

There is no need for an order of restitution in this case.

//

//

//

//

//

//

//

1

## CONCLUSION

2      The facts before the Court establish compelling reasons to impose a sentence slightly below the

3    guideline range—Mr. Reudales-Banegas asks the Court to sentence him to a term of imprisonment of

4    time served (approximately 3 months).

5

6

7    Dated:     February 24, 2020          Respectfully submitted,

8                                         STEVEN G. KALAR
                                       Federal Public Defender

9                                       Northern District of California

10                                       /S

11                                       CANDIS MITCHELL
                                       Assistant Federal Public Defender

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28